UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELKE TOBER-PURZE, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| CITY OF EVANSTON, | ) Case No. 13-cv-01503 |
| | ) |
| Defendant. | ) Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

On February 26, 2013, Plaintiff Elke Tober-Purze ("Tober-Purze") filed a lawsuit against Defendant City of Evanston ("Evanston"). Thereafter, on April 30, 2013, Tober-Purze filed a First Amended Complaint ("FAC"), alleging four claims: (I) sex discrimination, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000, *et seq.*; (II) age discrimination, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*; (III) violation of the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/14, for failure to pay vacation and sick time; and (IV) violation of the IWPCA for unlawful retaliation.

Evanston filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), as well as a Motion to Strike under Rule 12(f), and a Motion for Sanctions under Rule 11. The dismissal motion has been fully briefed.

### BACKGROUND

The following facts are drawn from the First Amended Complaint and are accepted as true for purposes of the Motion to Dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Tober-Purze worked for Evanston as a staff attorney beginning in June 2003. (FAC ¶ 12.) In November of 2005, Tober-Purze was promoted to Assistant Corporation Counsel. (*Id.* ¶ 13.) In February of 2008, Tober-Purze was promoted to Interim First Assistant

Corporation Counsel. (*Id.* ¶ 14.) Tober-Purze remained in this position until her termination on August 16, 2010. (*Id.* ¶ 36.) Prior to her termination, she received excellent performance evaluations and was never disciplined. (*Id.* ¶ 11.) During the course of her employment, Tober-Purze received less salary than other similarly situated male employees. (*Id.* ¶ 44.)

Tober-Purze encountered comments she and others found derogatory to women while she worked for Evanston. (*Id.* ¶¶ 15-17.) In late 2009, despite her superior experience, Evanston hired W. Grant Farrar as its City Attorney, instead of Tober-Purze or many other qualified females. (*Id.* ¶¶ 19-22.) Many female employees were terminated during Tober-Purze's employment with Evanston. (*Id.* ¶ 23.) Moreover, many of the colleagues terminated during her employment were much older than the attorneys who replaced them. (*Id.* ¶ 24.) Since Farrar has been City Attorney, he has hired male and younger female attorneys to replace Tober-Purze and other older, female attorneys. (*Id.* ¶ 43.)

On or about July 3, 2010, Tober-Purze made a vacation accrual payment request for 451.64 hours, consistent with Evanston's policy, which she asserts was owed to her pursuant to Evanston's employee policy. (*Id.* ¶ 31.) Prior to her termination, Tober-Purze was informed she was to lose 135.32 vacation accrual hours, and she was warned by her supervisor not to get anyone involved regarding the loss of the hours. (*Id.* ¶ 32.) Following the loss of these hours, Tober-Purze filed a complaint with the Illinois Department of Labor ("IDOL"), and the complaint was delivered to Evanston on August 13, 2010, just days before Tober-Purze's termination on August 16, 2010. (*Id.* ¶¶ 34-36.) Shortly thereafter, Evanston decided to withhold over 400 hours of sick pay from Tober-Purze, on the basis that Tober-Purze did not give proper notice before she left her employment with Evanston. (*Id.* ¶ 50.) However, Tober-Purze could not have satisfied this requirement, as she had been terminated by Evanston without

2

notice. (*Id.*) Evanston has not paid Tober-Purze a significant portion of the sick pay due to her, which demonstrates the disparate treatment Tober-Purze received on account of her sex and age. (*Id.* ¶¶ 51-52.) Evanston's decision to terminate Tober-Purze was motivated by a desire to have the office predominantly or entirely male. (*Id.* ¶ 54.) Her termination was retaliatory, as it was related to a continuing pattern of discrimination against Tober-Purze on the basis of her sex, and constitutes as wrongful sex discrimination. (*Id.* ¶¶ 55-56; 75.)

When Tober-Purze was terminated, her supervisor advised her she was terminated both for "ongoing performance issues" and because she filed the complaint with the IDOL. (*Id.* ¶ 37.) Though Evanston has a policy of providing pre-notice and pre-termination hearings for its employees, Tober-Purze received neither pre-notice nor a pre-termination hearing, because of her sex and age. (*Id.* ¶¶ 39-40.)

Following her termination, Evanston, through its City Attorney, Farrar, filed a complaint against Tober-Purze with the Attorney Registration and Disciplinary Commission ("ARDC") for filing a false wage claim with the IDOL; the ARDC did not take any action against Tober-Purze following Evanston's filing. (*Id.* ¶¶ 45, 48.)

**LEGAL STANDARD**

Evanston's Rule 12(b)(6) motion challenges the sufficiency of the Complaint. *Christensen v. Cnty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007). The pleading standard does not demand a high level of specificity; "[a] plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotation and citations omitted). When assessing a Rule 12(b)(6) motion, courts construe the complaint in the light most favorable to the plaintiff; all well pleaded

3

facts are accepted as true, and all reasonable inferences are construed in favor of the plaintiff. *Tamayo*, 526 F.3d at 1081. Still, a complaint must allege "enough facts to state a claim for relief that is plausible on its face" to survive a motion to dismiss under Rule 12(b)(6). *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). In order for the claim to be facially plausible, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In accordance with this principle, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

## ANALYSIS

*Count I: Sex Discrimination Under Title VII*

Evanston moves to dismiss Count I of the FAC by arguing that Tober-Purze failed to meet the requisite pleading standards. (Mem. in Support of Mot. to Dismiss at 9.) However, Evanston appears to conflate the summary judgment standard for a discrimination claim with the 12(b)(6) standard, discussing how Plaintiff can "prove a claim" and what evidence Plaintiff must demonstrate to establish her claims. (*Id.*) Indeed, nearly all the legal authority relied upon by Evanston in its motion with regards to the discrimination claims addressed rulings on summary judgment motions. (*Id.* at 9-11.)

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). For a Title VII claim to survive a 12(b)(6) motion, a plaintiff must meet two requirements:

> First, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests. Second, its allegations must plausibly suggest that the plaintiff has a right to

4

relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court.

*Tamayo*, 526 F.3d at 1084 (quoting *Equal Employment Opportunity Commission v. Concentra Health Services*, 496 F.3d 773, 776 (7th Cir. 2007)) (internal citations and quotations omitted). Hence, "a complaint alleging sex discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex." *Tamayo*, 526 F.3d at 1084.

Applying this standard, Tober-Purze's claim of sex discrimination under Title VII is adequately pled. Tober-Purze is in a protected class as a female, and her job performance met the expectations of her employer, as she was given good evaluations and was never disciplined prior to her termination. (*Id.* ¶ 11.) Tober-Purze alleged she was paid less than her male counterparts and that she did not receive temporary duty pay, which her male coworkers did receive. (FAC ¶ 14.) Tober-Purze did not receive promotions that her male counterparts did receive. (*Id.* ¶ 15.) She was also told by her superiors that she was "not that pretty", and one superior told Tober-Purze that the previous attorneys he had hired were "smart . . . good-looking . . . just gorgeous . . . [and wore] tight sweaters . . . short skirts . . . ." (*Id.* ¶ 17.) Tober-Purze was accused of having a sexual relationship with a male colleague by one of her superiors. (*Id.* ¶ 18.) Tober-Purze has also alleged herself and other female attorneys were told by a superior, "it's been all downhill since women got the vote"; these women were also instructed to get rid of magazines about female attorneys. (*Id.* ¶ 16.) Tober-Purze further claims she was deprived a pre-notice and pre-termination hearing because of her sex. (*Id.* ¶ 40.) She also asserts that she was not paid sick and vacation pay due to her on the basis of her sex and age. (*Id.* ¶ 52.) Finally, Tober-Purze alleges she was terminated on the basis of her sex, as Evanston desired to have an

all-male, or substantially male office. (*Id.* ¶¶ 54-55.) Failing to properly compensate Tober-Purze on the basis of her sex and terminating her on the basis of her sex are both adverse employment actions sufficient to support a claim of sex discrimination under Title VII.

Tober-Purze further alleges she was retaliated against on the basis of her gender. Tober-Purze claims she was told her termination was due both to her filing a claim with the IDOL and performance issues.[1] (*Id.* ¶ 37.) Tober-Purze claims she was retaliated against, in part, due to her complaint to the IDOL and that it was part of a continuing pattern of discrimination against Tober-Purze. (*Id.* ¶ 55.) Tober-Purze has alleged enough facts to put Evanston on notice as to her claim of discrimination, both through adverse employment actions and retaliation against Tober-Purze. Accordingly, Evanston's Motion to Dismiss is denied as to Count I of the FAC.

*Count II: Age Discrimination Under the ADEA*

A *prima facie* claim for age discrimination under the ADEA requires a plaintiff to demonstrate: "(1) he was over forty years of age; (2) he performed his job according to the employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees, not within the protected class, were treated more favorably." *Alexander v. Cit Tech. Fin. Services, Inc.*, 217 F. Supp. 2d 867, 888 (N.D. Ill. 2002). However, at the pleading stage, "[t]o survive a motion to dismiss under Rule 12(b)(6), a plaintiff in an employment discrimination case need not allege facts corresponding to each element of a *prima facie* case of . . . age discrimination." *Heinze v. Southern Illinois Healthcare*, No. 08–672–GPM, 2010 WL 276722, at *3 (S.D. Ill. Jan. 19, 2010) (citing *Swierkiewicz v. Sorema, N.A.*, 534 U.S.

---

[1] A claim of retaliation may also be alleged under the Illinois Wage Payment and Collection Act. *See* 820 ILCS 115/1 *et seq.*

506, 510 (2002)). Rather, a complaint "merely needs to give the defendant sufficient notice to enable him to begin to investigate and prepare a defense." *Tamayo*, 526 F.3d at 1085.

Here, Tober-Purze has sufficiently alleged she is a member of a protected class under the ADEA, as she is over forty years old, and that she performed her job satisfactorily. (FAC ¶¶ 58, 60-61.) Tober-Purze further alleges that Evanston sought to replace her with younger individuals and hired at least two attorneys who were at least fifteen years younger than Tober-Purze to replace her; she asserts that this was a primary reason for her termination. (*Id.* ¶¶ 41, 63.) Tober-Purze also asserts that Evanston did not pay her accrued sick and vacation time she was owed on account of her age. (*Id.* ¶ 52.) Other colleagues of Tober-Purze who were terminated were much older than the attorneys who replaced them. (*Id.* ¶ 24.) Therefore, Tober-Purze has sufficiently alleged enough facts to state a claim for age discrimination under the ADEA. *See Twombly*, 550 U.S. at 547.

*Count III: Violation of the IWPCA for Not Paying Vacation and Sick Time*

In order to establish a violation of the IWPCA for not paying accrued vacation and sick time, a plaintiff must provide specific allegations of an agreement between the employer and the employee to provide the vacation and sick time. *Smith v. C.H. James Rest. Holdings, L.L.C.*, Case No. 11 C 5545, 2012 WL 255806, at *1 (N.D. Ill. Jan. 26, 2012) (citations omitted). The IWPCA "requires certain pay only to the extent the parties' contract or agreement requires such pay." *Id.* (quoting *DeMarco v. Northwestern Memorial Healthcare*, Case No. 10 C 397, 2011 WL 3510896, at *6 (N.D. Ill. Aug. 10, 2011)). *See also Nat'l Metalcrafters v. McNeil*, 784 F.2d 817, 824 (7th Cir. 1986) ("The only thing the [IWPCA] requires is that the employer honor his contract.").

In the FAC, Tober-Purze alleges she was informed she was to lose some of her pay and that she was entitled to sick pay and vacation pay under Evanston's employment policy. (FAC ¶¶ 31-34, 67.) While Tober-Purze fails to allege the specific terms of the Evanston employment policy with regards to unpaid vacation and sick time, she states enough facts to establish a claim that a policy regarding her unpaid time existed and that Evanston violated this policy or agreement. "[A]n agreement under the IWPCA is 'broader than a contract.'" *Hess v. Konoski & Associates*, 668 F.3d 446, 452 (7th Cir. 2012); *Zabinsky v. Gelber Group, Inc.*, 807 N.E.2d 666, 671 (Ill. App. Ct. 2004) (the IWCPA "requires only a manifestation of mutual assent on the part of two or more persons; parties may enter into an 'agreement' without the formalities and accompanying legal protections of a contract.").

Reading the facts in totality and in a light most favorable to Tober-Purze, she has adequately alleged that an employment policy or agreement existed that supported her claim to unpaid vacation and sick time. Evanston's Motion to Dismiss Count III is denied.

*Count IV: Violation of the IWPCA for Retaliation*

Tober-Purze's final claim is for retaliation under the IWPCA. This claim is dismissed, as no private cause of action for retaliation under the IWPCA existed when Tober-Purze was terminated in 2010. 820 ILCS 115/14(a); (FAC ¶ 36). The amendment to the IWPCA adding the private right of action took effect on January 1, 2011, after she was terminated. 820 ILCS 115/14(a).

Tober-Purze's argument for retroactive application of this amendment is unavailing. Typically, legislation is presumed to *not* be retroactive, "unless Congress has clearly manifested its intent to the contrary." *Hughes Aircraft Co. v. United States*, 520 U.S. 939, 946 (1997). The United States Supreme Court has held such amendments should only apply retroactively when

8

they affect a procedural change, and not when they affect a substantive change. *Id.* at 951 ("[The statute] *creates* jurisdiction where none previously existed. . . . Such a statute, even though phrased in 'jurisdictional' terms, is as much subject to our presumption against retroactivity as any other."). In *Hughes*, the Supreme Court held that an amendment to the False Claims Act did not apply retroactively, holding that by "permitting actions by an expanded universe of plaintiffs with different incentives, the . . . amendment essentially creates a new cause of action, not just an increased likelihood that an existing cause of action will be pursued." *Id.* at 950. *See also Stone v. Hamilton*, 308 F.3d 751, 756-57 (7th Cir. 2002) (interpreting *Hughes* to mean an amendment to the Food Stamp Act cannot be applied retroactively if it increases the likelihood a person will have liability).

Illinois courts also operate under a presumption against retroactivity. "[S]tatutes and amendatory acts are presumed to operate prospectively unless the statutory language is so clear as to admit of no other construction. An exception to this general rule is that statutes or amendments which relate only to remedies or forms of procedure are given retrospective application." *Shoreline Towers Condominium Association v. Gassman*, 936 N.E.2d 1198, 1207-08 (Ill. App. Ct. 2010) (citations and quotations omitted). Accordingly, in Illinois, amendments to statutes can only apply retroactively when they are procedural and not substantive. *Caveney v. Bower*, 797 N.E.2d 596, 602 (Ill. 2003) (statutes "that are procedural in nature may be applied retroactively, while those that are substantive may not.").

Though retaliation was a criminal offense punishable under the IWPCA when Tober-Purze was terminated, no civil cause of action existed under the statute at that time. 820 ILCS 115/14(a) (prior to the amendment under Public Act 96-1407 § 10). The amendment, therefore, did not *add* to the penalty assessed for retaliation; it created a new, distinct remedy, which is a

9

substantive, rather than procedural, change.[2] *Native Am. Arts, Inc. v. Waldron Corp.*, 253 F. Supp. 2d 1041, 1044 (N.D. Ill. 2003) (concluding an amendment to the Indian Arts and Crafts Act that created a private right of action should not be applied retroactively). Similar to the Supreme Court's holding in *Hughes*, the amendment to the IWPCA created a new cause of action, "not just an increased likelihood that an existing cause of action will be pursued." *Hughes*, 520 U.S. at 950. Because the amendment affected a substantive change, the amendment to the IWPCA does not apply retroactively, and Tober-Purze has no right of action under this provision of the statute. Thus, Count IV of the FAC is dismissed with prejudice.

*Motion to Strike*

Evanston's motion also asks that portions of Tober-Purze's FAC be stricken. That request is denied. Motions to strike are generally not favored, and "pleadings are generally not stricken unless the party will be prejudiced otherwise." *Burke v. Chi. Sch. Reform Bd. of Trs.*, 169 F. Supp. 2d 843, 846 (N.D. Ill. 2001). Evanston has not made a sufficient showing that they will be prejudiced; therefore, the Motion to Strike is denied.

*Motion for Sanctions*

Finally, Evanston moves for sanctions against Tober-Purze, pursuant to Fed. R. Civ. P. 11, seeking fees and costs for preparing and filing the Motion to Dismiss and the Motion for Sanctions. Evanston argues that the filing of Count IV of the FAC amounted to Tober-Purze's filing of "frivolous claims that are not warranted by existing law." (Mot. for Sanctions at 1.)

---

[2] Tober-Purze relies on a decision that applied an amendment to the IWPCA retroactively; but in that case the private cause of action previously existed, and the amendment merely added a 2 percent monthly interest to unpaid wages. *Brandl v. Superior Air-Ground Service, Inc.*, Case No. 09 C 06019, 2012 WL 7763427, at *2 (N.D. Ill. Dec. 7, 2012).

In filing a pleading with the court, the party certifies to the best of its knowledge that the claims are warranted under existing law. Fed. R. Civ. P. 11(b)(2). Sanctions are appropriate where the party has not filed a complaint for proper purposes but, instead, asserts its claims simply to harass or cause unnecessary delay or expense. Fed. R. Civ. P. 11(b)(1). In determining if sanctions are warranted, the underlying dispute is considered from two perspectives. *Tabrizi v. Village of Glen Ellyn*, 883 F.2d 587, 592 (7th Cir. 1989). First, a court *subjectively* considers the facts to determine if the claim is made in good faith. *Id.* "Second, there must be reasonable inquiry into both fact and law; the legal theory must be *objectively* warranted by existing law or a good faith argument for the modification of existing law; and the lawyer must believe that the complaint is well grounded in fact." *Id.* (citations and quotations omitted).

A subjective review of the facts demonstrates that Count IV of the FAC was made in good faith. Tober-Purze reasonably, though incorrectly, believed Evanston was liable to her under the civil cause of action created for retaliation under the IWPCA, and such a claim does not appear to have been made in bad faith, or simply to harass Evanston. Second, Tober-Purze's legal theory to support her argument that the amendment to the IWPCA was procedural, rather than substantive, and therefore retroactively applied, was not inherently unreasonable (though ultimately incorrect). Asserting this claim did not demonstrate her reckless indifference for the law. Therefore, Evanston's Motion for Sanctions is denied.

## CONCLUSION

For the reasons set forth above, Evanston's Motion to Dismiss the First Amended Complaint pursuant to Rule 12(b)(6) is granted in part and denied in part. Evanston's Motion is granted as to Count IV, and Count IV is dismissed with prejudice. Evanston's Motion is denied as to Count I, II, and III. Evanston's Motion to Strike pursuant to Rule 12(f) is denied. Finally, Defendant's Rule 11 Motion for Sanctions [21] is also denied.

Date: August 21, 2013

*/s/ John W. Darrah*
JOHN W. DARRAH
United States District Court Judge